IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **STATE FARM MUTUAL AUTOMOBILE INSURANCE CO.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11 C 8084 |
| **ELECTROLUX HOME PRODUCTS, INC,** | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

On November 14, 2011, State Farm Mutual Automobile Insurance Co. ("State Farm") brought this breach of contract action against Electrolux Home Products, Inc. ("Electrolux"). Now before me is Electrolux's Motion to Dismiss State Farm's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(3) on the ground of improper venue because of an arbitration agreement between the parties. For the reasons stated herein, I deny the motion.

I.

State Farm is a commercial insurer of homeowners, while Electrolux manufactures household appliances, including clothes dryers and washing machines. As alleged in State Farm's First Amended Complaint ("FAC"), some of its insureds purchased defective Electrolux appliances and suffered losses as a result of fire or water damage. State Farm and its affiliates then paid those individuals for their losses and became subrogated to their rights

against Electrolux. State Farm seeks to recoup its payments to its insureds, and contends that Electrolux became obligated to reimburse State Farm when it failed to contest the claims in the manner provided for in the parties' Dispute Resolution Agreement ("DRA"). In particular, the FAC involves seven claims for fire or water damage allegedly caused by a defective Electrolux clothes dryer or washing machine, and ranging in amount from $12,037.43 to $168,416.62.

On September 14, 2007, Electrolux and State Farm entered into the DRA, which governed the resolution of State Farm subrogation claims for losses of $200,000 or less. The parties disagree as to whether the provisions of the DRA, which will be discussed more fully below, require arbitration of the seven breach of contract counts at issue before the court. State Farm contends that Electrolux failed to comply with its duty to provide State Farm with written notice of its decision to pay, deny, or seek to negotiate the claims at issue within 180 days of its receipt and review of supporting information from State Farm, as required by Section VI(C) of the DRA. Because of this failure, State Farm's option to elect to arbitrate the claims was never triggered, and the arbitration provision of the DRA is inapplicable, State Farm contends. Electrolux contends that under the plain language of the DRA, all claims subrogated to State Farm that are for losses of $200,000 or less are subject to arbitration.

II.

The Federal Arbitration Act ("FAA") provides "that a written provision in any contract evidencing an intent to settle by arbitration any future controversy arising out of such contract 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 556 (7th Cir. 2003) (quoting 9 U.S.C. § 2). The FAA was enacted to counter the traditional disfavor shown toward arbitration agreements and place them on the same footing as other contracts. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

Because arbitration is a matter of contract, however, a party cannot be forced to submit to arbitration any dispute that it has not agreed to submit. *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83 (2002) (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). This means that although there is a liberal federal policy favoring arbitration, the question of whether the parties have submitted a particular dispute for arbitration is for the courts to decide. *Id.* (citing *AT&T Techs., Inc. v. Commc'n Workers*, 475 U.S. 643, 649 (1986)). In determining whether the parties agreed to arbitrate a particular dispute, courts should apply the ordinary principles of contract interpretation. *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 130 S. Ct. 2847, 2856 (2010);

3

see *AT&T Techs*, 475 U.S. at 648–49 (noting that arbitrators have authority to resolve disputes only because the parties have agreed in advance to this method of dispute resolution).

I note that Electrolux styles its motion to dismiss as one brought under Fed. R. Civ. P. 12(b)(3) for improper venue. It is correct, as Electrolux argues, that if an agreement calls for arbitration in another district, dismissal for improper venue may be appropriate. *See Faulkenberg v. CB Tax Franchise Sys., LP,* 637 F.3d 801, 810–11 (7th Cir. 2011); *Cont'l Cas. Co. v. Am. Nat'l Ins.*, 417 F.3d 727, 733 (7th Cir. 2005).

In this case, however, the DRA calls for arbitrations to be held on a rotating basis in Chicago and Cleveland, Ohio. DRA, § VII. Because it is not clear that improper venue would be an appropriate basis for granting Electrolux's motion as to all of the claims in the FAC, I will instead consider this motion to be a request to stay the proceedings pending arbitration, which does not take its authority from Rule 12 of the Federal Rules of Civil Procedure, but rather from the FAA itself. *Cont'l Cas. Co.*, 417 F.3d at 732 n. 7 (citing 9 U.S.C. § 3). In determining whether the claims fall within the scope of the arbitration agreement, I will accept as true the factual allegations in State Farm's complaint. *See Dialysis Access Center, LLC v. RMS Lifeline*, 638 F.3d 367, 378

(1st Cir. 2011).[1]

III.

Electrolux argues, in essence, that all seven of the claims at issue in the FAC are "classic insurance subrogation claims" covered by the DRA. The DRA provides, in Section I, relating to "Claims or Disputes Covered by This Agreement:

> This Agreement covers subrogation claims for amounts equal to or less than $200,000.00 arising out of Products manufactured by ELECTROLUX and its affiliates . . . brought by STATE FARM against ELECTROLUX only, for losses occurring on or after the effective date of this Agreement and covered by personal lines policies issued by State Farm, and any counterclaims brought by ELECTROLUX arising out of such claims. . . . Disputes covered by this Agreement mean those instances in which STATE FARM and ELECTROLUX disagree regarding the appropriate resolution of a claim so as to require that claim to proceed to arbitration, and, unless a party opts out, mediation.

DRA, § 1. Here, Electrolux contends, the claims in the FAC meet all of these requirements because they are subrogation claims brought against Electrolux only, for amounts less than $200,000, arising out of products manufactured by Electrolux that allegedly caused losses covered by State Farm policies, and because the parties cannot agree as to the appropriate resolution of the claims.

---

[1] I note that although it styles its motion as one for dismissal for improper venue, which would allow for the consideration of evidence outside the complaint, Electrolux has not submitted any affidavits or other evidence countering the factual allegations in the complaint.

5

State Farm raises four arguments in opposition to Electrolux's motion. First, State Farm contends that the DRA established a process for resolving subrogation claims, and claims for which State Farm did not follow that process are not arbitrable under the plain language of the contract. Second, State Farm contends that its suit is for breach of the DRA, and as such the breach of contract claims are not subrogation claims subject to arbitration. Third, State Farm argues that Electrolux defaulted on its duty to provide written notice of the denial of the claims at issue, so it is in default with proceeding with arbitration. Finally, State Farm argues that the DRA has been terminated, and by its terms only those claims for which a notice for election of arbitration had been issued by State Farm as of the date of termination are subject to the DRA.

In assessing these arguments, I note that the DRA provides for the application of the substantive law of Illinois to the subrogation claims and for the application of the FAA to the procedures to be used in arbitration. DRA, § VII. The parties do not address what state's law should be used to interpret the DRA itself. Because this is a diversity case, and in the absence of any contrary suggestion by the parties, I will apply Illinois law. *See Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003). Under Illinois law, the goal of contract interpretation is to give meaning to the parties' intent. *Gallagher v. Lenart*, 226 Ill.2d

208, 232 (2007). The contract's language, given its plain meaning and read in context, is the best evidence of that intent. *Id.*

Thus, a resolution of this issue requires a close reading of the DRA in context. Section VI of the DRA outlines the "Claims Process." It provides that State Farm is to give notice of the claim to Electrolux within 180 days after receipt of the claim by State Farm, and then to provide certain supporting information 550 days after providing notice. DRA, § VI(B)(1),(2).

Electrolux, upon receiving notice of the claim, is entitled to inspect the product at issue. DRA, § VI(C). Electrolux then has 180 days from its receipt of the supporting information and its inspection of the product to provide State Farm with written notice of its decision to pay, deny, or seek to negotiate the claim with State Farm. *Id.* If Electrolux fails to provide notice within the required time, it must compensate State Farm for its documented damages, not to exceed the amount paid by State Farm on the claim. *Id.*

If Electrolux expresses an intent to pay, or if the parties subsequently compromise the claim after Electrolux sends written notice of its intent to negotiate, then State Farm shall release Electrolux from liability. DRA, § VI(C). The third scenario provided for in the DRA applies to situations in which Electrolux sends written notice of its intent to deny the claim, or situations in which Electrolux sends notice of its intent to negotiate, but

7

those negotiations are not successful within 120 days of the notice. In such a scenario, State Farm must either accept the denial in writing or send notice of its election of arbitration or mediation.[2] DRA, § VI(D). The DRA lays out a time line for State Farm to submit notice of its election of arbitration, what that notice should contain, and the procedures for binding arbitration or mediation. *See* DRA §§ VI(D)-(G).

The FAC alleges that for each of the claims at issue, State Farm complied with its duty to provide timely notice and timely provision of supporting information. The FAC alleges, however, that Electrolux failed to fulfill its obligation to provide written notice of its intent to either pay, deny, or seek to negotiate the claims within 180 days. As such, State Farm contends, the arbitration provision is inapplicable and Electrolux is obligated to compensate it for each of the claims.

Electrolux urges the court to broadly interpret the provisions of the DRA, noting that it plainly states that disputes on claims of $25,000 or less will be resolved by binding arbitration, while disputes of a greater amount, but less than $200,000, will be subject to mediation or arbitration. DRA, § VI(F). Here, Electrolux contends, it is clear that it and State Farm disagree as

---

[2] Under the DRA, claims of less than $25,000 are subject to binding arbitration, while claims greater than $25,000 and less than $200,000 are to be resolved by mediation or, if one of the parties opts out, binding arbitration. DRA, § VI(G).

to the resolution of the claims because State Farm has filed suit, so these claims must be submitted to arbitration. To accept this broad interpretation, however, would require me to ignore the plain language of the provision of the DRA relating to Electrolux's notice requirement.

Reading the agreement as a whole, it is clear the parties agreed only to arbitrate those claims that were processed in a certain manner, i.e. after notice by Electrolux that it would deny a claim or after notice by Electrolux of an intent to negotiate and the failure of those negotiations. The contract specifically provides that if Electrolux fails to provide written notice of its decision within 180 days after receipt of a claim, Electrolux agrees to compensate State Farm for its documented damages. There is no mention in the DRA of a process for arbitrating disputes based on Electrolux's alleged failure to provide written notice of its decision. Rather, State Farm's claims are more properly understood not as subrogation claims, but rather as claims that Electrolux breached the DRA when it failed to compensate State Farm as it was required to do after failing to provide written notice of its response to the claims within the required time period.

Electrolux correctly argues that any doubts as to whether an issue is arbitrable should be resolved in favor of arbitration, *see Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983), but this policy is not a substitute for examining the

9

language of the agreement and determining the parties' intent. *See Stone*, 328 F.3d at 345 (emphasizing that "arbitration depends on agreement" and "nothing beats normal rules of contract law to determine what the parties' agreement entails.)  Because the claims brought by State Farm in the FAC are not arbitrable under the terms of the contract, I must deny Electrolux's motion.

Additionally, I note that in its response to the motion to dismiss, State Farm contends that the DRA became effective on September 14, 2007 for a period of one year, was subsequently extended for two additional one-year periods by written agreement of the parties, and terminated on September 14, 2010.  Section IX of the DRA provides that in the event of termination of the agreement, "Claims for which a Notice of Election of Arbitration have been issued by State Farm and an arbitration hearing has not been held as of the effective date of termination shall be subject to the terms of this Agreement."  State Farm contends that because Electrolux did not deny the underlying subrogation claims prior to the termination of the DRA, State Farm could not and did not issue notices for election of arbitration prior to the termination of the DRA.  In its reply, Electrolux does not dispute that the DRA has terminated.  Rather, it points to case law holding that arbitration provisions may survive the termination of a contract. *See Litton Fin. Printing Div. v. NLRB,* 501 U.S. 190, 208 n.3 (1991).  It is true that as a general rule, and in the absence of express language

to the contrary, courts have held that arbitration agreements survive the expiration of the contract providing a right to arbitration. However, this is a case in which the parties did include express language explaining under what circumstances claims would be subject to the provisions of the DRA after its termination. Because it is undisputed, at least at this stage of the case, that State Farm did not issue notices of election of arbitration of these claims prior to the termination of the DRA, this is an additional basis for finding these claims to be non-arbitrable. Because denial of Electrolux's motion is clearly compelled for these reasons, I need not consider State Farm's alternative argument that Electrolux has defaulted on its right to arbitration.

### III.

For these reasons, I deny Electrolux's Motion to Dismiss for Improper Venue.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 7, 2012